**BLACHLY–LANE ELECTRIC COOPERATIVE ASSOCIATION; Central Electric, Cooperative; the City of Seattle; City Light Department Inc.; Clearwater Power Co., Inc.; Consumers Power, Inc.; Coos–Curry Electric Cooperative, Inc.; Douglas Electric Cooperative; Fall River Rural Electric Cooperative, Inc.; Lane Electric Cooperative; Lost River Electric Cooperative, Inc.; Northern Lights, Inc.; Akanogan County Electric Cooperative Pacific Northwest Generating Cooperative; Public Utility District No. 1 of Cowlitz County; Washington Public Utility District No. 1 of Douglas County; Washington Public Utility District No. 1 of Franklin County;**

---

Washington; Public Utility District No. 2 of Grant County; Washington; Public Utility District No. 1 of Pend Oreille County Washington Raft River Rural Electric Cooperative, Inc.; Salmon River Electric Cooperative; Umatilla Electric Cooperative Association and West Oregon Electric Cooperative, Inc., Petitioners,

Industrial Customers of Northwest Utilities, Intervenor,

Confederated Tribes of the Umatilla Indian Reservation, Confederated Tribes of the Warm Spring Reservation of Oregon Nez Perce Tribe; Confederated Tribes and Bands of the Yakama Indian Nation, Petitioner—Intervenor,

v.

U.S. DEPT. OF ENERGY; Bonneville Power Administration, Respondents.

No. 01–71520.

BPA No. Power Act.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 2003.

Decided Oct. 30, 2003.

R. Erick Johnson, Esq., Jay T. Waldron, Esq., James T. Waldron, Esq., Karen O'Kasey, Schwabe, Williamson & Wyatt, Portland, OR, for Petitioners.

Melinda J. Davison, Esq., Davison Van Cleve PC, Portland, OR, for Intervenor.

Howard G. Arnett, Esq., Marceau, Karnopp, Petersen, Noteboom & Hubel, Bend, OR, Christopher W. Leahy, Esq., Fredericks, Pelcyger, Hester & White, LLC, Louisville, CO, David J. Cummings, Esq., Office of Legal Counsel Nez Perce, Lapwai, ID, Tim Weaver, Esq., Law Offices of Tim Weaver, Yakima, WA, for Petitioner–Intervenor.

Marybeth Van Buren, Esq., Bonneville Power Administration, Office of General Counsel, Kurt R. Casad, Esq., Stephen J. Odell, USPO–Office of the U.S. Attorney, Portland, OR, for Respondents.

Before GOODWIN, HUG, and BERZON, Circuit Judges.

## MEMORANDUM *

Petitioners (certain public utilities) and the Tribal Intervenors challenge the

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Bonneville Power Administration's ("BPA") decision to sell power to Direct Service Industry ("DSI") customers.

To the extent that the September 18, 2001 Petition for Review seeks to challenge rate determinations, Petitioners acknowledge this issue is outside the scope of the Petition for Review and not properly before this court. After submission of this appeal on July 10, 2003, the Federal Energy Regulatory Commission ("FERC") granted final confirmation and approval of the proposed rates on July 21, 2003. Counsel for BPA made the following to statements at oral argument: "All the ratemaking issues regarding allocation of FBS [Federal Base System] costs, etc., are properly reviewed by FERC to the extent that they regard our cost recovery," and "Any issue regarding FBS is solely an issue of price or cost." We agree with these statements. Consequently, the following claims (along with any others that fall within the "ratemaking" rubric described by BPA counsel), while unripe for purposes of this action, may be raised by Petitioners in a separate action now that FERC review is complete:

● BPA violated statutory preferences and the definition of FBS by considering power acquired for non-preference customers as FBS replacements under 16 U.S.C. § 839a(10)(C).

● BPA violated 16 U.S.C. §§ 839a(10) and 839d(b)(4) by attributing 2900 aMW to FBS replacements under 16 U.S.C. § 839a(10)(C) when § 839a(10)(C) replacements should not have exceeded 2669 aMW.

● BPA violated the Administrative Procedure Act, 5 U.S.C. § 706, by failing to support with substantial evidence the decision to consider power ac-

quired for non-preference customers as FBS replacements under 16 U.S.C. § 839a(10)(C).

Each of Petitioners' remaining claims is time-barred. Petitioners' challenge to BPA's power sales to DSI customers was not filed within the statute of limitations. The Northwest Power Act imposes a 90-day statute of limitations for challenges to BPA's final actions. 16 U.S.C. § 839f(e)(5). Power sales contracts are final agency actions. 16 U.S.C. § 839f(e)(1)(B). BPA's power sales contracts with DSI customers were offered through October 2000, and signed and executed by BPA on October 31, 2000. Petitioners did not file their petition until September 18, 2001, approximately eight months untimely.

Petitioners knew or should have known about the decision to sell power to DSI customers by October 31, 2000. Petitioners were aware of the 20-year contracts expiring in October 2001. *See* 16 U.S.C. § 839c(g)(1).[1] On August 13, 1999, BPA published a Federal Register notice initiating BPA's 2002 power rate hearing, including the issue of whether or not to provide service to DSI customers. BPA also made publicly available prototype power sales contracts for review and comment, similar in all material terms to the signed contracts. These prototype contracts, which did not include the lengthy reserve provisions present in previous DSI contracts, were circulated after the June 18, 1999 letter describing the Compromise Approach. The June 18th letter clearly indicated that BPA would be selling DSI customers something other than purely surplus power.

After receiving comment on DSI service under the Compromise Approach, BPA

---

1. This statute states that within nine months of December 5, 1980, the Administrator of the BPA shall offer long term contracts to its customers, within the limitations of 16 U.S.C. § 832d(a). Section 832d(a) states that the terms of these contracts may not exceed twenty years. Thus, the long term contracts would expire no later than October 2001.

published in May 2000 its *2002 Final Power Rate Proposal, Administrator's Record of Decision* ("May ROD"). BPA fully considered the decision to sell power to DSI customers in the May ROD, and filed its proposed rates with the FERC for confirmation and approval.

In June 2000, BPA publicly disclosed the September 30, 2000 subscription window to execute power sales contracts with all BPA customers, including DSIs. BPA thereafter negotiated power sales contracts with its customers, including Petitioners. On August 1, 2000, BPA announced a temporary suspension in signing subscription contracts. On August 31, 2000, BPA announced that it would resume signing subscription contracts on September 5, 2000, and extend the subscription window for power sales contracts to October 31, 2000. Finally, BPA published a Federal Register notice on December 1, 2000 announcing the execution of power sales contracts on October 31, 2000.

The decision to sell power to DSI customers was public. Complete, non-redacted copies of the DSI service contracts were not necessary in order to petition this court for review of the decision to sell power to DSI customers for several reasons. The BPA made available prototype sales contracts, the 2002 rate hearing solicited comment on DSI service, the May ROD fully addressed DSI service, and at least four subsequent public notices confirmed DSI service and the date of contract execution.

Finally, the supplemental rate proceeding did not re-open the decision to sell power to DSI customers. Term 1 from the sales contracts provides that "[t]his Agreement takes effect on the date signed by the Parties (Execution Date)." BPA signed the contracts no later than October 31, 2000. The supplemental rate proceeding was limited in scope to address Cost Recovery Adjustment Clause ("CRAC") risk mitigation issues. The Federal Register notice to the supplemental hearing stated that BPA had already executed all subscription power sales contracts. These CRAC mitigation issues are separate from power sales decisions. The Supplemental ROD modified the CRAC, but did not modify any power sales decisions.

Petitioners' claims are DISMISSED. Accordingly, Petitioners' motions to compel production of documents and to appoint a special master are DENIED.

Additionally, the Tribal Intervenors' claim under 16 U.S.C. § 839d(a)(2) is DISMISSED as outside the scope of the original petition. Their claim under 16 U.S.C. § 839c(d)(1)(A) is DISMISSED as time-barred for the same reasons as provided for Petitioners' analogous claim.